IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLEE DONYE JOHNSON, | ) | |
|     Petitioner, | ) | Civil Action No. 08-262 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| RAYMOND J. SOBINA, et al., | ) | |
|     Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the Amended Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

On May 20, 1998, an Erie County jury convicted Petitioner Kellee Johnson of third-degree murder in the shooting death of Lamont Stovall, who was also known as "Flip" or "Flipper." Stovall was shot and killed on October 20, 1997, as he was walking out of O'Brien's Tavern, a bar located on the corner of Third and German Streets in Erie, Pennsylvania. Before the Court is Petitioner's Amended Petition for Writ of Habeas Corpus [See ECF Nos. 1, 2 and 11], which he has filed pursuant to 28 U.S.C. § 2254. He claims that he is entitled to habeas relief because he has obtained new evidence of his innocence.

A.  **Relevant Background**[1]

At the trial, the Commonwealth introduced evidence to show that on the evening of October 20, 1997, Petitioner met several friends, including Eric Russell and Dennis Robinson, at O'Brien's Tavern. The tavern's owner, John O'Brien, asked Petitioner to leave because he was fighting with other patrons. Petitioner went outside and armed himself with his .357 Smith & Wesson revolver. O'Brien testified that he saw a male outside the tavern point a gun at one of the doorways and fire two or three shots at it. (N.T. Day 1 at pp. 46-47). One of the bullets struck Stovall in the head as he was leaving the establishment. He died almost immediately. Stovall had not been involved in the fight and was an innocent bystander.

One of Petitioner's accomplices, Dennis Robinson, also was outside the tavern and fired his .22 caliber gun. (N.T. Day 1 at p. 105). He pleaded guilty to crimes related to the incident. The record before this Court does not disclose what those crimes were. In accordance with his plea agreement, he was supposed to testify at Petitioner's trial. However, he initially failed to appear and then, after the Sheriff located him, the Commonwealth decided not to call him. (N.T. Day 2 at pp. 43-45).

For his involvement in the shooting, Petitioner's other accomplice, Eric Russell, was charged with carrying a firearm without a license, recklessly endangering another person, hindering apprehension, and possessing an instrument of a crime. He pleaded guilty to the first two charges. The Commonwealth dropped the remaining two charges contingent upon him providing truthful testimony at Petitioner's trial. (N.T. Day 1 at pp. 80-81).

To prove that Petitioner was the individual who shot into the tavern's doorway and killed Stovall, the Commonwealth introduced several pieces of evidence. First, it introduced Petitioner's confession.

---

[1] Respondents have submitted the Common Pleas Court's file and transcripts. The documents contained in the file are numbered 1 through 67 and shall be cited to as "CP Dkt. No. __ ."

Although he had denied involvement in the shooting when the police questioned him the night of the killing, by the next day (October 21, 1997), he gave a videotaped statement in which he admitted to firing the shots that killed Stovall. He told the police that he had fired in self-defense.[2] Second, Jack Wall, a forensic firearm and tool mark examiner with the Pennsylvania State Police, testified that in his expert opinion the projectile recovered from Stovall's body had been discharged from Petitioner's .357 Smith & Wesson revolver. (N.T. Day 2 at p. 30). *Wall testified that the projectile could not have been fired from Dennis Robinson's .22 caliber weapon.* (N.T. Day 2 at p. 37). Third, Miriam Benjamin, who has known Petitioner since middle school, testified that she saw him fire a gun into the doorway of O'Brien's Tavern. Finally, Eric Russell testified that Petitioner fired a gun at the tavern's doorway three or four times and then said "I think I shot Flip in the face." (N.T. Day 1 at pp. 87-99).

Petitioner testified in his own defense. He stated that he lied when he told the police that he was the one who shot Stovall. He said that he had no involvement in the shooting. He attempted to divert suspicion to his accomplices, and stated that he saw Dennis Robinson running from the bar shooting his .22 caliber weapon. (N.T. Day 2 at pp. 60-91). The defense also presented the testimony of Andre McCall and Dorian Manus. Andre McCall testified that he saw Petitioner walking up German Street a few moments after the shooting had occurred. He stated that Petitioner asked him what had happened, that he did not have a gun on him, and that he did not see Petitioner shoot anyone. (N.T. Day 2 at pp. 49-50). Dorian Manus testified that he saw the shooter and he was not Petitioner. He also testified that he saw Petitioner just moments after the shooting and he was unarmed and did not know what had happened. (N.T. Day 2 at pp. 55-56).

---

[2] Petitioner's videotaped statements were played to the jury. The record submitted to this Court does not contain a transcription of those statements. However, what he stated to the police is recounted in other parts of the trial transcript.

The jury did not credit Petitioner's defense and found him guilty of third-degree murder, aggravated assault, reckless endangerment, and carrying a firearm without a license. The court sentenced him to an aggregate sentence of 20-40 years' incarceration.

Petitioner filed a direct appeal in which he raised claims that are not relevant to this proceeding. On May 18, 1999, the Superior Court of Pennsylvania issued a Memorandum in which it affirmed his judgment of sentence. (CP Dkt. No. 29, <u>Commonwealth v. Johnson</u>, No. 1474 Pittsburgh 1998, slip op. (Pa.Super. May 18, 1999)). Petitioner did not file a petition for allowance of appeal ("PAA") with the Supreme Court of Pennsylvania. Accordingly, his judgment of sentence became final when the 30-day time period to do so expired, which was on or around June 17, 1999. <u>Swartz v. Meyers</u>, 204 F.3d 417, 419 (3d Cir. 2000) (a judgment of sentence becomes final at the conclusion of direct review or the expiration of time for seeking such review).

On or around May 8, 2000, Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, in which he alleged, in relevant part, that his trial counsel (John Moore, Esq.) was ineffective for failing to call ten witnesses who would have either exonerated him and/or implicated Dennis Robinson as Stovall's killer. (CP Dkt. No. 30). Petitioner could only specifically identify five witnesses that his counsel should have called: Richard Barnett, Dante Carr, Brenda Horne, Danielle Jones, and Tamica Hansbrew.

The Common Pleas Court appointed William J. Hathaway, Esq., to represent Petitioner. He subsequently filed a "no merit" letter with the court, in which he requested permission to withdraw as counsel because he had concluded that all of Petitioner's claims were frivolous. The court did not immediately grant Hathaway's motion. He represented Petitioner at an evidentiary hearing that was conducted on August 9, 2000.

4

On November 7, 2000, the Common Pleas Court issued an Opinion in which it denied all of Petitioner's claims. It rejected on the merits his claim that his trial counsel was ineffective. (CP Dkt. No. 34, Commonwealth v. Johnson, No. 3102 A&B of 1997, slip op. (C.P. Erie Nov. 7, 2000)). The Superior Court agreed that Petitioner's claim had no merit and on September 24, 2001, it issued a Memorandum affirming the denial of PCRA relief. (CP Dkt. No. 45, Commonwealth v. Johnson, No. 2015 WDA 2000, slip op. (Pa.Super. Sept. 24, 2001)). On April 3, 2002, the Supreme Court of Pennsylvania denied a PAA. It denied Petitioner's application for reconsideration on May 8, 2002. (CP Dkt. Nos. 42-43).

On July 10, 2002, Petitioner filed a petition for writ of habeas corpus with this Court. See Johnson v. District Attorney, 1:02-cv-186-SJM-SPB (W.D. Pa.). He claimed that his former counsel were ineffective: (1) for failing to call Tamica Hansbrew and Brenda Horn as defense witnesses; (2) for abandoning him; and, (3) in matters related to litigation of his suppression motion. He also claimed that the trial court had been biased against him. [See ECF No. 1 at p. 7].

Petitioner subsequently filed a motion to withdraw the habeas petition. On October 21, 2003, this Court dismissed it without prejudice. [ECF No. 1 at p. 7].

On January 26, 2004, Petitioner filed a second PCRA motion with the Common Pleas Court. (CP Dkt. No. 46). He raised numerous claims in which he challenged the disposition of his first PCRA motion, as well as the effectiveness of all prior counsel. The Common Pleas Court denied this second motion as untimely, and on June 16, 2005, the Superior Court affirmed. (CP Dkt. No. 56, Commonwealth v. Johnson, No. 1197 WDA 2004, slip op. (Pa.Super. July 16, 2005)).

In the meantime, in early June of 2005, Petitioner had filed in both the Common Pleas Court and the Superior Court a *pro se* "Motion To Enter In As New Evidence." (CP Dkt. No. 54; see also ECF No. 2-1). He attached to the motion a notarized affidavit by Alex Corder, dated May 24, 2005. Corder

5

stated that both he and Dennis Robinson were paroled to a program at SCI Albion in 2002-2003 and that Dennis Robinson admitted to him that "he was the person who really shot 'Flip'." [ECF No. 2-1 at p. 2].

On June 9, 2005, the Common Pleas Court entered an Order granting Petitioner's motion to the extent that it referred the matter "to the District Attorney's Office for any further investigation deemed appropriate in the professional opinion of the District Attorney's Office."[3] (CP Dkt. No. 55). On June 16, 2005, the same day that it issued its Memorandum affirming the denial of the second PCRA motion, the Superior Court issued an Order denying the motion to enter new evidence that Petitioner had filed with it, holding:

> Appellant's motion … raises the same claim [he] raised in his first PCRA petition, in the context of ten individuals whose testimony ostensibly would have been the same as or similar to Corder's. The court held a hearing on that petition, at which trial counsel and several purported witnesses testified. Following the hearing, held August 9, 2000, the court dismissed the petition as without merit. As such, appellant's motion does not present new evidence.

(CP Dkt. No. 58 at p. 4).

Almost one year later, on June 6, 2006, Petitioner, through attorney Gene P. Placidi, Esq., filed a third PCRA motion. (CP Dkt. No. 57). This motion attached Corder's May 24, 2005, affidavit, and an affidavit from Dennis Robinson, which was dated April 4, 2005. Dennis Robinson *does not* admit to shooting Stovall. He does state, however, that he lied when he had told the police, during the investigation of the shooting, that Petitioner shot Stovall. He also explains why he failed to appear to testify as a Commonwealth witnesses at the trial:

> I never showed up [to testifying at Petitioner's trial] being as though they wanted me to testify against [Petitioner]. During the time of questioning me, they said, which would be the detectives, that [Petitioner] was pointing the finger at me, then they said that everybody was pointing the finger at me, so my statement was that whoever saying I did it must be the one that did it…. The main reason why I did not show up to testify is

---

[3] The Common Pleas Court later explained: "This Court is not an investigative body and has forwarded [Alex Corder's statement] to the District Attorney's Office for any appropriate action." (CP Dkt. No. 58 at p. 2).

> because how can I just come to court on a man when I never seen this man with a gun, or shoot a gun. I will never try and take another man's freedom from him. When I was questioned, I was intoxicated, smoking marijuana, drinking, I was only 19 years old & I was very scared cause I never been in anything like this before. The court offered me 4 to [illegible] months, at the time I had 4 months already in, so wouldn't the court think that with an offer such as that a human being wouldn't take that and run with it? Like I was saying, I couldn't see myself coming to testify on anyone if I never seen the man with a gun or see him shoot one. Could the courts take a strong look at this matter?

(ECF No. 2-1 at p. 3).

Petitioner, through Attorney Placidi, argued that Alex Corder's and Dennis Robinson's affidavits entitled him to a new trial under 42 Pa.C.S. § 9543(a)(2)(vi), which provides that a petitioner is entitled to PCRA relief if he proves that his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced."

The Common Pleas Court denied the third PCRA motion without a hearing. (CP Dkt. Nos. 58-61). On April 9, 2007, the Superior Court issued a Memorandum in which it affirmed that decision. (CP Dkt. No. 66, Commonwealth v. Johnson, No. 1461 WDA 2006, slip op. (Pa.Super. Apr. 9, 2007)). It held that the third PCRA motion was untimely because the law requires that any motion based upon the discovery of new evidence of innocence be filed within 60 days of the date the claim could first have been raised. 42 Pa.C.S. § 9545(b)(2). It rejected Petitioner's argument that the lower court should have treated the June 6, 2005, *pro se* "Motion To Enter In As New Evidence" as a PCRA motion, which would have resulted in compliance with the 60-day time limit, explaining:

> Simply stated, the lower court was specifically prohibited by case law from treating the "Motion to Enter in as New Evidence" as a PCRA petition when another PCRA petition [the second one] was still pending on appeal in this case. See Commonwealth v. Lark, 560 Pa. 487, 746 A.2d 585 (2000). Under the procedure approved by Lark, if new evidence comes to light while an appeal of a prior PCRA petition is still pending, the appellant cannot immediately file a petition, but must file his subsequent petition invoking the after-discovered evidence exception within 60 days of the decision concluding the pending appeal. So long as the subsequent petition is filed within 60 days

of the decision terminating the previously pending appeal, the exception will be considered timely raised even if it is beyond 60 days from the date the after discovered evidence is actually discovered.

In Appellant's case, his PCRA petition admits that the affidavits were tendered to him on April 4, 2005 and May 24, 2005 respectively. … During this time, Appellant had a PCRA petition pending on appeal and, therefore, he could not file a PCRA petition citing these affidavits as after-discovered evidence. Appellant's pending PCRA appeal was decided on June 16, 2005. Therefore, Appellant had until August 15, 2005 to file a petition invoking the after-discovered evidence exception as based upon these affidavits, but he failed to do so until June 6, 2006.

(CP Dkt. No. 66, Johnson, No. 1461 WDA 2006, slip op. at pp. 4-5). The Supreme Court of Pennsylvania denied Petitioner's PAA on September 27, 2007. (CP Dkt. No. 65).

In his Amended Petition For Writ Of Habeas Corpus presently before this Court, Petitioner challenges the manner in which the state courts disposed of his June 2005 "Motion To Enter In As New Evidence." He also claims that his new evidence of innocence (Alex Corder's and Dennis Robinson's 2005 affidavits) entitle him to habeas relief. As additional support for this claim, he relies upon two additional statements which he has not presented to the state courts: a statement given by John H. Cooley on March 29, 2008 [ECF No. 2-1 at pp. 25-26], and second statement by Alex Corder, this one dated February 16, 2009 [ECF No. 11-1 at pp. 1-2]. John H. Cooley states that Dennis Robinson confessed to him that he killed Stovall. Alex Corder recounts other instances in which Dennis Robinson allegedly confessed to him that he killed Stovall.[4] Alex Corder also claims that Dennis Robinson's family paid Andre McCall $5,000 "not to testify for [Petitioner] to take the blame away from Dennis." [ECF No. 11-1 at p. 1]. However, as recounted above, Andre McCall did testify for the defense at Petitioner's trial.

---

[4] Petitioner's reliance upon Alex Corder's February 16, 2009, statement and John H. Cooley's March 29, 2008, statement is improper. They are neither sworn affidavits nor unsworn declarations under penalty of perjury as required by 28 U.S.C. § 1746. Moreover, a petitioner may not simply attach documents to his habeas petition and ask the district court to consider them. Rather, evidence relied upon by the petitioner that is not otherwise part of the state court record must be properly admitted into the record before the district court by way of either an evidentiary hearing or pursuant to Rule 7 of the Rules Governing Section 2254 Case, which is regarding expanding the record.

The District Attorney's Office of Erie County has filed the Respondents' Answer [ECF No. 7], and all relevant state court records.

**B.     Discussion**

**(1)     Petitioner's Claims Are Not Cognizable Under 28 U.S.C. § 2254**

This proceeding is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").  Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his rights under the United States Constitution.  28 U.S.C. § 2254(a).

In his first claim, Petitioner challenges the manner in which the state courts handled his efforts to reopen his case in June of 2005 via his "Motion To Enter In As New Evidence."  He contends that the Common Pleas Court violated his due process rights because it did nothing aside from forwarding the matter to the District Attorney's office.  He also claims that the Superior Court violated his due process rights when it denied the motion outright in its Order of June 16, 2005.  [ECF No. 1 at pp. 10-11].

This Court cannot grant Petitioner relief on this claim.  Even if the state courts erred in the manner in which they disposed of Petitioner's motion – and there is no evidence that they did – Petitioner would not be entitled to habeas relief.[5]  As the U.S. Court of Appeals for the Third Circuit has

---

5     Because Petitioner takes such exception with the state courts' decisions regarding his "Motion To Enter In As New Evidence," it is worth noting that federal courts reviewing habeas claims cannot re-examine state court determinations on state law questions.  See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991) ("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights.  We take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.").

explained, habeas proceedings are not the appropriate forum for a petitioner to pursue claims of error in state collateral proceedings:

> The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. *Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.* We have often noted the general proposition that habeas proceedings are "hybrid actions"; they are "independent civil dispositions of completed criminal proceedings." Federal habeas power is "limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment."

Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) (emphasis added). See also Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]s we admonished in Hassine, alleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction. It is the original trial that is the 'main event' for habeas purposes.")

Petitioner's second claim also is not cognizable. He contends that he is entitled to habeas relief because he has produced new evidence of his actual innocence. [ECF No. 1 at pp. 11-12]. Importantly, when he presented this same claim to the state court in his third PCRA motion, he raised it under a provision of the PCRA *that does not have a counterpart in the federal habeas statute*. As set forth above, Petitioner raised this claim under 42 Pa.C.S. § 9543(a)(2)(vi), which provides that a prisoner is entitled to PCRA relief if he proves that his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." See also Albrecht v. Horn, 485 F.3d 103, 123 (3d Cir. 2007) (describing this provision of the PCRA as "the provision of the state post-conviction relief act dealing with claims of innocence based on after discovered evidence."). In contrast, while a credible claim of actual innocence can act as a "gateway" through which a federal habeas petitioner may

10

pass to have an otherwise procedurally barred constitutional claim considered on the merits, see Schlup v. Delo, 513 U.S. 298 (1995),[6] a stand-alone claim of actual innocence must be denied because it is not cognizable in federal habeas. Albrecht, 485 F.3d at 121-22, citing Herrera v. Collins, 506 U.S. 390 (1993).

The reason that stand-alone claims of actual innocence are not cognizable in federal habeas was given in Herrera. In that case, the Supreme Court held that federal habeas review is not available "absent an independent constitutional violation occurring in the underlying state criminal proceeding," and that "a claim of 'actual innocence' is not itself a constitutional claim." 506 U.S. at 400, 404. The Court explained that once a defendant is found guilty after a fair trial in the state court, he no longer is entitled to a presumption of innocence, and thus comes before the federal habeas court not as one who is innocent, but as a convicted criminal. Id. at 399-400. Because such a determination in the state criminal trial is "a decisive and portentous event" and "[s]ociety's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the guilt or innocence of one of its citizens," freestanding claims of actual innocence are not reviewable in federal habeas actions. Id. at 401 (internal quotations and citations omitted). The Court noted that "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." Id. at 400. "Federal courts are not forums in which to relitigate state trials." Id. at 401 (quotations and citation omitted). Thus, the Court rejected Herrera's claim that, even if the proceedings that resulted in his conviction and sentence were entirely fair and error free, his innocence would make his execution a constitutionally intolerable event.

---

[6] Petitioner does not attach his claim of innocence to an independent constitutional violation. For example, he does not allege that the prosecution suppressed the evidence upon which he now relies.

Based upon the Herrera decision, the Third Circuit Court repeatedly has emphasized that in non-capital cases such is this case: "It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), quoting Herrera, 506 U.S. at 400; Albrecht, 485 F.3d at 121-22. Thus, Petitioner's stand-alone claim of actual innocence is not cognizable under the federal habeas corpus statute.

Finally, the Court recognizes that in Herrera, the Supreme Court left open the possibility that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim." 506 U.S. at 417. In House v. Bell, 547 U.S. 518 (2006), the Supreme Court once again left open the question of whether a truly persuasive freestanding innocence claim in a capital case would warrant federal habeas relief if no state avenues of relief remain available. Id. Recently, in District Attorney's Office for the Third Judicial District v. Osborne, — U.S. —, 129 S.Ct. 2308 (2009), which was a non-capital case in which a state inmate brought an action under 42 U.S.C. § 1983 to compel the State of Alaska to release biological evidence so that it could be subject to DNA testing, the Supreme Court in dicta assumed without deciding that an actual innocence claim could be brought in habeas, but noted "the high standard any claimant would have to meet" to succeed with such a claim. Id. at 2321, citing House and Herrera.

If indeed an actual innocence claim could be brought in a non-capital federal habeas case, Petitioner has fallen far short of offering the quality of new evidence that would entitle him to habeas relief. Petitioner confessed to the police that he shot Stovall, and the jury rejected his attempts to disavow that confession. He also told Eric Russell that he shot Stovall. The forensic firearm and tool mark expert testified that the projectile recovered from Stovall's body came from Petitioner's gun *and*

12

*could not have been fired from Dennis Robinson's gun*. Finally, Miriam Benjamin, a longtime acquaintance of Petitioner's, testified that she saw him fire the fatal shots into O'Brien Tavern's doorway. Considering this evidence of his guilt, Petitioner's new evidence of purported innocence is much less compelling than he proposes.

Based upon all of the foregoing, Petitioner's claims should be denied because they are not cognizable.

### (2) Petitioner's Claims Are Untimely

The Amended Petition for Writ of Habeas Corpus also must be denied because his claims are untimely under AEDPA's statute of limitations. AEDPA imposes a one-year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C. § 2244(d) and it provides, in relevant part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of –
>
> - - -
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[7]

---

[7] The vast majority of habeas cases fall within § 2244(d)(1)(A), with AEDPA's limitation period commencing on the date the state prisoner's judgment of sentence became final by the conclusion of direct review. In Petitioner's case, his judgment of sentence became final on or around June 17, 1999, and therefore AEDPA's limitation period began to run on that date. Swartz, 204 F.3d at 419. He filed his first PCRA motion on or around May 8, 2000. Between those two dates, 325 days of AEDPA's one-year limitations period expired. It was tolled pursuant to § 2244(d) during the pendency of the first PCRA proceeding. That proceeding concluded, at the very latest, on May 8, 2002. Swartz, 204 F.3d at 419-20; see also Lawrence v. Florida, 549 U.S. 327 (2007). AEDPA's limitations period began to run again the next day, on May 9, 2002.

13

Petitioner contends that his habeas petition is timely filed under § 2244(d)(1)(D). The Court does not agree. He received his "newly-discovered" evidence of innocence sometime before June 2, 2005, which is the date he filed with the Common Pleas Court his "Motion To Enter In As New Evidence." That court granted his motion only to the extent that it referred the matter to the District Attorney's Office for any investigation it deemed necessary. On June 16, 2005, the Superior Court denied that same motion. It also denied Petitioner's second PCRA motion. He did not file a PAA, which would have been due on or around July 16, 2005. After that date, no proceedings before the state courts were pending.

Giving Petitioner the benefit of the doubt, the Court will assume that AEDPA's limitation period under § 2244(d)(1)(D) began to run in July of 2005, after his second PCRA proceeding concluded. If he wished to proceed with a timely federal habeas corpus, he should have filed a petition with this Court at the very latest within one year of the date his second PCRA proceeding concluded. That is, he should have filed his federal habeas petition by July of 2006. Because he failed to do so, his claims are untimely.

There is no basis to statutorily toll the limitations period pursuant to § 2244(d)(2). Petitioner did not file his third PCRA motion until August of 2006, which was after AEDPA's limitations period had already expired (in July of 2006). Moreover, because that third PCRA motion was untimely, it cannot qualify as a "properly filed application for State post-conviction or other collateral review" under the terms of § 2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (a state postconviction petition that is "rejected ... as untimely ... was not 'properly filed' ... and ... [does] not entitle[] [a federal habeas corpus petitioner] to statutory tolling under § 2244(d)(2).").

---

Since 325 days already had expired from AEDPA's limitations period, Petitioner only had 40 more days – until on or around June 18, 2002 – to file a timely habeas petition under § 2244(d)(1)(A). He did not meet that deadline, and therefore the instant petition is untimely under that subparagraph.

14

Petitioner appears to be arguing that he is entitled to equitable tolling because the Common Pleas Court "purported to 'grant' [his] motion [to enter new evidence], effectively forestalling him from taking any additional action." [ECF No. 1 at p. 16]. This argument is rejected because no actions by state courts interfered with his ability to file a timely federal habeas petition. A petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. Holland v. Florida, ___ U.S. ___, 130 S.Ct. 2549, 2562 (2010). Petitioner has not met either of these requirements. See also Lacava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005) ("courts should be sparing in their use of this doctrine, applying equitable tolling only in the rare situation where it is demanded by sound legal principles as well as the interests of justice.").

Accordingly, in addition to being noncognizable, Petitioner's claims should be denied because they are untimely under AEDPA's statute of limitations.

### C.     **Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standards here, jurists of reason would not find it debatable whether

each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Amended Petition For Writ Of Habeas Corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Petitioner is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  March 30 , 2011

cc:    The Honorable Sean J. McLaughlin
       United States District Judge